**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**A.V. RODRIGUEZ** **PLAINTIFF**

**v.** **Case No. 4:25-cv-00687-LPR**

**MARKWAYNE MULLIN, in his official capacity as Secretary of U.S. Department of Homeland Security; JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services; and TODD BLANCHE, in his official capacity as Attorney General of the United States[1]** **DEFENDANTS**

**ORDER**

In 2021, Plaintiff A.V. Rodriguez petitioned the United States Citizenship and Immigration Services (USCIS) for a U visa. His petition has not yet been finally adjudicated. After years of what he saw as unreasonable delay, Mr. Rodriguez brought the instant action in 2025. He claims that USCIS has failed to timely adjudicate his petition in violation of the Administrative Procedure Act and in violation of the United States Constitution. Mr. Rodriguez asks this Court to compel USCIS to take various agency actions regarding his visa petition.

Before the Court is a Motion to Dismiss. According to the Motion, the Court lacks subject-matter jurisdiction and, in any event, Mr. Rodriguez fails to state a viable claim. Having reviewed the Complaint, the Motion, and the parties' dueling briefs—and having held oral argument in the matter—the Court now concludes that Mr. Rodriguez lacks Article III standing to pursue the relief he seeks. Accordingly, the Court dismisses this action on jurisdictional grounds.[2]

---

[1] These officials are hereby substituted as party Defendants pursuant to Federal Rule of Civil Procedure 25(d). The Clerk is directed to update the docket sheet accordingly.

[2] Because the Court lacks jurisdiction, it need not and cannot reach the 12(b)(6) arguments in the Motion to Dismiss. *See Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002) ("Subject matter jurisdiction is a threshold matter that [courts] are obligated to address at the outset.").

## Legal Background

Congress established the U visa by way of the Victims of Trafficking and Violence Protection Act of 2000.[3] Under this law, Congress authorized USCIS to grant U–1 nonimmigrant status to an alien who (1) has suffered substantial abuse resulting from certain criminal activity, (2) possesses information concerning that activity, (3) is helpful to law enforcement investigating the criminal activity, provided that (4) the criminal activity violated U.S. law or occurred in the U.S.[4] But Congress placed an important constraint on USCIS's authority. Specifically, Congress limited the number of principal U visas that USCIS may issue in any fiscal year to 10,000.[5]

Here's the basic process of evaluating and granting U visas under USCIS regulations. To kick things off, a petitioner must file Form I–918 with supporting evidence.[6] If USCIS determines that the petitioner satisfies the statutory requirements, USCIS approves the U visa petition.[7] This gives the alien U–1 nonimmigrant status.[8] This status generally may be granted for a period of up to four years, subject to the statutory and regulatory provisions governing extension.[9]

Sounds simple, right? It's not. Because annual demand for U visas has substantially exceeded the 10,000-visa statutory cap, USCIS established (by regulation) what it calls a waiting list.[10] If USCIS determines that the petitioner satisfies the statutory requirements for a U visa, but

---

[3] *See* Pub. L. No. 106-386, 114 Stat. 1464.

[4] 8 U.S.C. § 1101(a)(15)(U)(i)(I)–(IV) (summarizing elements). The principal idea behind the U visa seems to be incentivizing alien victims of serious crimes to report those crimes and then assist law enforcement in the investigation and prosecution of those crimes. *See* Pub. L. No. 106-386, § 1513(a)(2)(A), 114 Stat. 1464, 1533–34.

[5] *See* 8 U.S.C. § 1184(p)(2)(A). USCIS has sole jurisdiction over all U visa petitions. *See* 8 C.F.R. § 214.14(c)(1).

[6] *See id.* § 214.14(c)(1). The governing statute and the regulations distinguish between principal petitioners and derivative petitioners. This distinction is not relevant to this case, so the Court will not dwell on the distinction.

[7] *See id.* § 214.14(c)(5)(i).

[8] *See id.*

[9] *See* 8 U.S.C. § 1184(p)(6); 8 C.F.R. § 214.14(g)(2)(i)–(ii).

[10] *See* 8 C.F.R. § 214.14(d)(2).

that the petition cannot be granted because the annual visa cap has already been reached, USCIS must place the petitioner on the U visa waitlist.[11] Placement on the waitlist is not a rock-solid guarantee that the petitioner will receive a U visa once it's his turn in line. That's because, when there are enough U visas available for that waitlisted petitioner to get one, the agency must first ensure "the petitioner remains admissible and eligible for U nonimmigrant status."[12] Still, being placed on the waitlist triggers certain interim benefits for a petitioner while he awaits his turn to obtain a U visa. Specifically, USCIS "will grant deferred action or parole" to a petitioner while he is on the waitlist.[13] And USCIS "may authorize employment" for petitioners on the waitlist.[14]

We are not quite done adding complexity. The process to get on the waitlist—which requires USCIS to make a near-complete adjudication of the petitioner's eligibility for a U visa—has itself developed a substantial backlog. In response to that backlog, USCIS has established (through its Policy Manual) what it calls a Bona Fide Determination (BFD) process.[15] Under the BFD process, USCIS determines whether a pending U visa petition is bona fide—meaning whether the petition was filed "in good faith" and "without fraud or deceit."[16] Among other things, USCIS

---

[11] *See id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* The regulation makes clear that any employment authorization is "in [the] discretion" of USCIS. *Id.*; *see also* 3 USCIS Policy Manual pt. C, ch. 6 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6 ("Principal petitioners placed on the waiting list are eligible for employment authorization . . . .").

[15] *See* USCIS, POLICY ALERT PA-2021-13, BONA FIDE DETERMINATION PROCESS FOR VICTIMS OF QUALIFYING CRIMES, AND EMPLOYMENT AUTHORIZATION AND DEFERRED ACTION FOR CERTAIN PETITIONERS (June 14, 2021). The BFD process appears to have an adequate statutory anchor. *See* 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title.").

[16] 3 USCIS Policy Manual pt. C, ch. 5 (2026) (quoting Black's Law Dictionary (11th ed. 2019)) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5.

checks to make sure that the petition facially complies with initial evidence requirements and that the petitioner has passed the required background checks.[17]

If USCIS makes a favorable BFD determination, USCIS "may grant" the petitioner "work authorization" while the petition remains pending.[18] And "[i]f USCIS grants the alien a [BFD] Employment Authorization Document [EAD] . . . as a result of the BFD process, USCIS then also exercises its discretion to grant that alien deferred action for the period of" employment authorization.[19] The point here is that, like placement on the waitlist, a favorable BFD determination provides significant interim benefits while petitioners wait their turn for a full U visa adjudication. But, also like placement on the waitlist, a favorable BFD determination does not confer U–1 nonimmigrant status or any ultimate guarantee of a U visa.

One last complication. USCIS generally does not conduct waitlist adjudications for petitioners who receive a favorable BFD determination, work authorization, and deferred action.[20]

---

[17] *See id.* For example, USCIS would check that the petition includes some kind of evidence that, on its face, suggests that the petitioner (1) has suffered substantial physical or mental abuse as a result of being a victim of certain specified crimes, (2) possessed information about that criminal activity, (3) was, is, or will be helpful to the investigation or prosecution of the crime, and that (4) the criminal activity violated U.S. law or occurred in the U.S. 8 C.F.R. § 214.14(c)(2)(i)-(iv).

[18] 8 U.S.C. § 1184(p)(6).

[19] 3 USCIS Policy Manual pt. C, ch. 5 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5. In this lawsuit, no party has challenged USCIS's ability to use its discretion to grant deferred action to petitioners for whom it has made a favorable BFD determination. The Court notes that 8 U.S.C. § 1184(p)(6) does not *expressly* authorize USCIS to give deferred action to petitioners for whom it has made a favorable BFD determination. But the Court also notes that there is an at-least-reasonable argument that this authority is implicit in the authority that is expressly given to USCIS by this statute. In explicit language, the statute authorizes USCIS to grant "work authorization" after a successful BFD determination. And a grant of work authorization would make very little (if any) logical sense if deferred action couldn't be granted for the same period. Perhaps that argument would win the day. Perhaps not. Or perhaps there is another statutory basis to support the grant of deferred action in these circumstances. *See, e.g.*, 6 U.S.C. § 202(4) ("The Secretary shall be responsible for . . . [e]stablishing and administering rules, in accordance with section 236 of this title, governing the granting of visas or other forms of permission, including parole, to enter the United States to individuals who are not a citizen or an alien lawfully admitted for permanent residence in the United States."). The issue has not been developed by the parties and is not before the Court. So, the Court will not decide it. Instead, the Court assumes for purposes of today's decision that USCIS's grant of deferred action in these circumstances has a sufficient statutory anchor.

[20] *See* 3 USCIS Policy Manual pt. C, Ch. 5 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5.

For these petitioners, the next step in the process is a final U visa adjudication when it is their turn in line to have their petition finally adjudicated.[21] When a new fiscal year begins, and thus another 10,000 U visas become available, USCIS conducts final adjudications—until it reaches 10,000 granted visas—for both petitioners on the waitlist and petitioners granted BFD status.[22] As to the order of final adjudication, USCIS uses the first-in-first-out rule, meaning the oldest-filed petition is first in line for final adjudication.[23] Accordingly, a petitioner's spot in the final-adjudication line does not depend in any way on whether the petitioner is on the waitlist or instead was given BFD status.[24]

**Factual Background**[25]

Mr. Rodriguez is a citizen of Mexico.[26] He entered the United States in 2007, and currently lives in Pulaski County, Arkansas.[27] Although the Complaint never expressly says so, several pled

---

[21] *See id.*

[22] *See* 8 C.F.R. § 214.14(d)(2); 3 USCIS Policy Manual pt. C, ch. 7 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7.

[23] *See* 8 C.F.R. § 214.14(d)(2).

[24] *See id.*; 3 USCIS Policy Manual pt. C, ch. 7 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7 ("The BFD process was created as an additional mechanism to provide petitioners with bona fide petitions with employment authorization and deferred action, which are benefits equal to those accorded to petitioners placed on the waiting list. Although current regulatory language notes the prioritization of petitioners placed on the waiting list for grants of U nonimmigrant status under the statutory cap as visas become available, the regulation also clearly envisions 'the oldest petitions receiving the highest priority' for such visa numbers. To best reconcile these regulatory provisions with the BFD policy, and to maintain fairness between petitioners placed on the waiting list and petitioners issued BFD EADs, USCIS prioritizes all petitions for adjudication of U nonimmigrant status under the statutory cap in the order they were received, ensuring older petitions maintain their priority over newer petitions. Consequently, when U nonimmigrant visas become available each fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order of filing date with the oldest filings receiving highest priority, to meet the statutory cap.").

[25] All facts herein are taken from the Complaint. That is because, as discussed below, factual allegations in a complaint are treated as true for the purposes of resolving a facial jurisdictional challenge at the motion-to-dismiss stage. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

[26] *See* Pl.'s Compl. (Doc. 1) ¶ 7.

[27] *See id.* ¶¶ 7, 47.

allegations imply that Mr. Rodriguez was in the country illegally for a substantial period of time before he petitioned for a U visa. Here's what we know.

In October of 2007, Mr. Rodriguez was the victim of a violent kidnapping while present at his employer's farm in Illinois.[28] Various armed assailants captured him, tied him up, and transported him to a remote wooded area.[29] The kidnappers then contacted his employer and issued ransom demands.[30] After managing to free himself, Mr. Rodriguez immediately contacted law enforcement and assisted them as they investigated and documented the aggravated kidnapping.[31]

Fast forward 14 years. On May 11, 2021, Mr. Rodriguez filed the U visa petition at issue in this case.[32] USCIS has not yet finally adjudicated his U visa petition.[33] Nor has it done the type of adjudication that would (if favorable) place him on the waitlist.[34] Instead, USCIS granted him BFD status.[35] Based on his BFD status, Mr. Rodriguez has received both employment authorization and deferred action from USCIS.[36] Still, Mr. Rodriguez is not satisfied with the state of things. He asks this Court to "[o]rder USCIS to provide full U visa adjudication of [his petition], or in the alternative, place [him] on the U visa waitlist . . . ."[37]

---

[28] *See id.* ¶ 48.

[29] *See id.* ¶ 49.

[30] *See id.*

[31] *See id.* ¶ 50.

[32] *See id.* ¶ 4.

[33] *See id.*

[34] *See id.*

[35] *See id.* ¶ 65. USCIS granted this status to Mr. Rodriguez on December 14, 2023. *See id.*

[36] *See id.*

[37] *See id.* ¶ 5 (Prayer for Relief).

## Analysis

Article III of the United States Constitution limits the federal judicial power to presiding over actual cases and controversies.[38] That limitation is incredibly important to our constitutional structure. It helps ensure that unelected judges exercise an intentionally modest judicial power instead of the intentionally expansive and intrusive powers of the executive or legislative branches.[39] And this—like all separation of powers protections—protects individual liberty.[40]

Accordingly, a court's first obligation is to ensure it has the constitutional authority to hear whatever action is brought before it. We call this authority a fancy word: jurisdiction. And one critical aspect of whether a court has jurisdiction over an action is whether the plaintiff has something called standing to sue (or just standing for short). Standing is widely recognized as the "irreducible constitutional minimum" that must be met before a federal court has the constitutional authority to adjudicate a plaintiff's claim.[41] Indeed, it is now black letter law that "[e]stablishing subject matter jurisdiction requires a party to show it has standing to sue."[42]

Here's how this works in practice. "The party seeking to invoke federal jurisdiction . . . carries the burden" of establishing it.[43] Depending on the stage of the case, the type of burden that

---

[38] *See* U.S. CONST. art. III, § 2; *see, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

[39] As Hamilton explained in Federalist No. 78, although "the general liberty of the people can never be endangered" by a judiciary that "remains truly distinct from both the legislature and the executive[,]" that liberty has "everything to fear" from a judiciary where "the power of judging" is mixed with the power of legislating or executing the laws. *See* THE FEDERALIST NO. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

[40] *See id.*; *see also Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J., dissenting) ("Without a secure structure of separated powers, our Bill of Rights would be worthless, as are the bills of rights of many nations of the world that have adopted, or even improved upon, the mere words of ours.").

[41] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[42] *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021) (citing *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005)).

[43] *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013).

the party invoking jurisdiction must meet changes.[44] But as a general matter, when a plaintiff seeks to invoke the federal judicial power, he or she must satisfy all three of the following elements: (1) "the [person] must have suffered an injury in fact"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[45] Lawyers and judges often use a shorthand to refer to these elements: injury in fact, traceability, and redressability.

There are different ways a defendant can raise jurisdictional concerns. In this case, the Government raised the issue of jurisdiction by way of a motion under Federal Rule of Civil Procedure 12(b)(1).[46] This Rule permits a defendant to move for dismissal of a claim for lack of subject matter jurisdiction.[47] A 12(b)(1) motion to dismiss may assert either a facial or factual attack on jurisdiction.[48] In the instant case, USCIS brings a facial attack.[49] Among other things, that means the Court must confine its analysis solely to the face of the Complaint and accept as true all well-pleaded, non-conclusory factual allegations.[50] It also means that Mr. Rodriguez need only show that the allegations in his Complaint make it plausible that the Court has jurisdiction to hear and decide the claims at issue.[51]

---

[44] *Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

[45] *Id.* at 560–61 (internal quotation marks and citations omitted).

[46] *See* Defs.' Mot. to Dismiss (Doc. 14).

[47] Fed. R. Civ. P. 12(b)(1).

[48] *See Carlsen*, 833 F.3d at 908.

[49] The parties appear to agree that this is a facial challenge. *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 15) at 9 ("Defendant brings a facial challenge."); *see also* Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 4–5 (articulating the standard for a facial challenge and not a factual challenge).

[50] *See Carlsen*, 833 F.3d at 908.

[51] *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**Full and Final Adjudication Claim**[52]

Mr. Rodriguez first asks this Court to order USCIS to "provide [him] full U visa adjudication."[53] The Court notes that the Complaint is less clear as to what Mr. Rodriguez is seeking through this request. That is especially true because of what Mr. Rodriguez says in his Opposition to the Motion to Dismiss. Specifically, Mr. Rodriguez goes out of his way to make clear that he "does not seek an order requiring USCIS to issue a U-visa in excess of the statutory cap or to bypass other petitioners in final visa allocation."[54] And at oral argument Mr. Rodriguez's counsel made similar statements. In short, it appears what Mr. Rodriguez is really after is merely the type of adjudication that would place him on the waitlist.[55]

To the extent Mr. Rodriguez is solely asking for the type of adjudication that would (if favorable) put him on the waitlist, the Court addresses that claim in the next section. But to the extent Mr. Rodriguez is asking for some type of adjudication or resolution that is more final than that, the Court addresses the claim here and concludes that Mr. Rodriguez lacks standing to bring

---

[52] Although the actual claims at issue here are an APA and constitutional challenge, the instant section's heading and the subsequent section's heading refer instead to the two different types of relief that Mr. Rodriguez requests. This is solely for clarity and ease of understanding. Because both Mr. Rodriguez's APA claim and Mr. Rodriguez's constitutional claim request these two types of relief, discussions of standing with regard to these relief requests cover the question of standing with respect to all claims in this case.

[53] Pl.'s Compl. (Doc. 1) ¶ 5 (Prayer for Relief); *see also id.* ¶¶ 4, 77.

[54] Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 6.

[55] *See id.* at 1 ("The statutory cap applies only to approvals, *not to waiting list placement*, and USCIS cannot leave petitions unresolved indefinitely." (emphasis added)); *id.* ("Plaintiff also has a cognizable due process interest, as filing a U visa petition triggers statutory and regulatory entitlements, *including waiting list adjudication* that may not be arbitrarily denied . . . ." (emphasis added)); *id.* ("Plaintiff seeks only timely adjudication *and proper placement on the waiting list*." (emphasis added)); *id.* at 2 ("When USCIS finds a petitioner eligible for U status but for the statutory cap, it must issue a Waiting List Determination . . . , which is a full adjudication of eligibility under 8 C.F.R. § 214.14(d)(2)."). It is very likely, given these and other statements in his Brief opposing the Motion to Dismiss, that Mr. Rodriguez is using the term "full U visa adjudication" in his Complaint to refer to the type of adjudication that places a successful petitioner on the waitlist until there is an available U visa based on the first-in-first-out rule. But, as the Court explained earlier in this Order, placement on waitlist is not a rock-solid guarantee that the petitioner will receive a U visa once it's his turn in line because, when there are enough U visas available for that waitlisted petitioner to get one, the agency must first ensure "the petitioner remains admissible and eligible for U nonimmigrant status." 8 C.F.R. § 214.14(d)(2). Placement on the waitlist, then, is not truly a full and final adjudication.

such a claim. Such relief would require USCIS to depart from either or both of the statutorily-required annual cap and the USCIS first-in-first-out regulation governing the order in which petitions are adjudicated for purposes of actually awarding U visas. The essence of such relief would be to allow Mr. Rodriguez to cut the U visa line.

If Mr. Rodriguez is in any way asking for this kind of relief, the Court lacks jurisdiction to entertain the request. That is because there are insurmountable traceability and redressability problems associated with such a request. In these circumstances, Mr. Rodriguez's real beef would be with the statutory cap and/or the first-in-first-out regulation. But he has not directly challenged the statutory cap as unconstitutional, and he has not challenged the first-in-first-out regulation as unconstitutional or unlawful. And a court cannot order the Executive Branch to violate a currently valid statute or regulation.[56] Long story short, the Court could not offer (even if he prevailed) the relief Mr. Rodriguez wants, and the relief the Court might offer would not alleviate his alleged problem.

**Waitlist Determination Claim**

Mr. Rodriguez asks this Court to order USCIS to perform the adjudication that would (if favorable) place him on the U visa waitlist.[57] He argues that the "statutory cap applies only to approvals, not to waiting list placement, and USCIS cannot leave petitions unresolved

[56] Like statutes, regulations carry the force of law. Except in circumstances not at issue here, so long as a statute or regulation is in effect, the Executive is bound by it. *See United States v. Nixon*, 418 U.S. 683, 695-96 (1974); *cf. Taylor v. McCament*, 875 F.3d 849, 854-55 (7th Cir. 2017) (holding that a U visa petitioner could not satisfy the redressability requirement for standing because the agency did not have the statutory authority to give the alien the relief he sought, as the 10,000-petition limit had already been reached in the years at issue). The instant case is slightly different from *Taylor* because the 10,000-petition cap for 2026 has not yet been reached, at least according to the Government. *See* Defs. Br. in Supp. of Mot. to Dismiss (Doc. 15) at 12-13. However, that distinction is not relevant here because the regulation requires a first-in-first-out policy and this Court still cannot order USCIS to put Mr. Rodriguez ahead of earlier filers.

[57] *See, e.g.*, Pl.'s Compl. (Doc. 1) ¶ 5 (Prayer for Relief); Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 1.

indefinitely."[58] He further argues that USCIS is required by regulation to perform the adjudication that would (if successful) place him on the waitlist, and its failure to do so has caused (and is still causing) him an injury that the Court can redress.[59]

Mr. Rodriguez lacks standing for this claim. As the Government notes in its briefing, Mr. Rodriguez already has received (by virtue of his BFD designation) all the benefits that being placed on the waitlist confers.[60] Specifically, Mr. Rodriguez has been given work authorization and deferred action. Those are the same benefits he would get from being placed on the waitlist. So, exactly what is Mr. Rodriguez's injury here? Of course, there's another—more legalese—way of saying the same thing. Even assuming arguendo that USCIS is required to perform the adjudication that would place Mr. Rodriguez on the waitlist, the failure to do so on its own does not establish an injury in fact for purposes of the standing analysis. That is because "bare procedural violation[s]" without concrete harm do not establish standing.[61]

Mr. Rodriguez's first theory of injury is that waitlist status confers greater "[]certainty" than a BFD designation.[62] The argument goes as follows. Because waitlist status must be granted to all eligible petitioners who, solely due to the cap, are not granted a U visa, waitlist placement—as opposed to a BFD designation—would give Mr. Rodriguez greater assurance that his petition will ultimately be granted.[63] But there is a major flaw in this chain of logic. A waitlist status is not a final decision that would confer any guarantee of eventually receiving a U visa once it's Mr. Rodriguez's turn in line. USCIS policy makes clear that "[t]hough petitioners placed on the

---

[58] Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 1.

[59] *See id.* at 8.

[60] *See* Defs.' Reply in Supp. of Mot. to Dismiss (Doc. 22) at 2.

[61] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

[62] Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 9.

[63] *See id.* at 9-10.

waiting list are generally approved for U nonimmigrant status, approval is not guaranteed."[64] That's because, when it is a waitlisted petitioner's turn to actually get a U visa, USCIS "must review the filing again and determine that the petitioner remains eligible for U nonimmigrant status before approving the petition . . . ."[65] The point here is that placement on the waitlist (after a favorable determination of eligibility) would not provide Mr. Rodriguez with the certainty or finality for which he is looking.[66] Accordingly, the identicality of the actual benefits between the waitlist and BFD status is what really matters for standing purposes—and why Mr. Rodriguez has no concrete injury here.[67]

---

[64] 3 USCIS Policy Manual pt. C, ch. 6 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6.

[65] *Id.* The re-review process is imposed by regulation. *See* 8 C.F.R. § 214.14(d)(2) ("USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status."). No party challenges the re-review process as unconstitutional or unlawful.

[66] Even if placement on the waitlist were a guarantee of a U visa when one eventually became available, the Court is highly skeptical that there would be an injury in fact prior to the time that the petitioner would have actually received a visa. The withholding of a guarantee of a future benefit is not the same as the withholding of the benefit itself. Everyone agrees the latter would be a concrete injury. The former, however, seems anything but concrete. In any event, the Court need not reach that tougher question because the existence of the re-review process makes it clear that placement on the waitlist is not a guarantee of a U visa.

[67] There is one difference between waitlist status and a BFD designation: the possibility of parole. *See* 8 C.F.R. 214.14(d)(2) ("USCIS will grant deferred action *or parole* to U-1 petitioners . . . while the U-1 petitioners are on the waiting list." (emphasis added)). Two different types of parole exist. The first type (simply referred to as "parole") permits non-citizens living overseas to enter the U.S. temporarily while their petition is pending. *See De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1270 (N.D. Cal. 2024). The second type—known as advance parole—permits petitioners already living in the U.S. to leave the country and reenter lawfully without jeopardizing their pending visa petition. *See id.* Since Mr. Rodriguez is already living in the U.S., he would only care about advance parole. Even assuming—and this is a huge assumption—that (1) advance parole is available to those on the waitlist, and (2) it is not available to those with a BFD determination, this would not affect the Court's standing analysis. Here's why. First, and most importantly, Mr. Rodriguez does not plead that he seeks advance parole or even to travel in general. Second, if he had pled as much, the point would only matter for purposes of establishing an injury in fact "if receiving advance parole was mandatory as part of the Waiting List." *Argueta v. Jaddou*, No. 4:23-CV-3002, 2023 WL 8082113, at *8 (D. Neb. Nov. 21, 2023). But it is not. Parole "is merely one of two options that [USCIS] has at its disposal . . . ." *Id.* Because USCIS can (and has) denied parole to individuals on the waitlist, petitioners are "not denied anything to which they are entitled" by receiving a BFD designation as opposed to placement on the waitlist. *Id.* It is also worth noting that, in other litigation, USCIS has represented that, "[o]nce deferred action has been granted, USCIS does not additionally consider noncitizens for parole based on their placement on the waiting list[,]" so U visa petitioners (like Mr. Rodriguez) who have been "granted a bona fide determination are in the same exact position as U-visa petitioners who have been placed on the waiting list when it comes to . . . parole." *De Sousa*, 755 F. Supp. 3d at 1274. The bottom line is that any parole-related distinction between waitlist status and a BFD designation does not make a difference for Article III standing purposes in the circumstances of this case.

Still, Mr. Rodriguez persists. He argues that waitlist placement, as opposed to a BFD designation, would "guarantee[] the prioritization of his Petition at the beginning of the new fiscal year" and would put him "in line for a U-Visa once the statutory cap resets."[68] That is simply not true. And it is not the type of historical fact that a court must accept as true at this stage of the litigation. It is a legal contention, and the Court doesn't have to uncritically accept those.[69]

Mr. Rodriguez is *already in line* for a U visa, and he has been in line since he filed his petition. Waitlist status would also not give him a better spot in the line. His spot in line is determined solely by the date he filed his petition (not by a waitlist designation or a BFD designation).[70] When adjudicating petitions, USCIS draws from both those with waitlist status and those with a BFD designation in the order of filing date, consistent with the first-in-first-out regulation.[71] It does not distinguish between the two groups. Mr. Rodriguez's BFD designation did not remove him from the queue or otherwise disadvantage him in any way.[72] And placement on the waitlist would not improve his position in the line or otherwise increase his likelihood of receiving a U visa.

---

[68] *See* Pl.'s Compl. (Doc. 1) ¶ 5 (Prayer for Relief); Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 7.

[69] *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

[70] *See* 8 C.F.R. § 214.14(d)(2); *see also* 3 USCIS Policy Manual pt. C, ch. 7 (2026) available at: https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7 ("The BFD process was created as an additional mechanism to provide petitioners with bona fide petitions with employment authorization and deferred action, which are benefits equal to those accorded to petitioners placed on the waiting list. Although current regulatory language notes the prioritization of petitioners placed on the waiting list for grants of U nonimmigrant status under the statutory cap as visas become available, the regulation also clearly envisions 'the oldest petitions receiving the highest priority' for such visa numbers. To best reconcile these regulatory provisions with the BFD policy, and to maintain fairness between petitioners placed on the waiting list and petitioners issued BFD EADs, USCIS prioritizes all petitions for adjudication of U nonimmigrant status under the statutory cap in the order they were received, ensuring older petitions maintain their priority over newer petitions. Consequently, when U nonimmigrant visas become available each fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order of filing date with the oldest filings receiving highest priority, to meet the statutory cap.").

[71] *See id.*

[72] In fact, the BFD designation has been a tremendous boon for Mr. Rodriguez. It has allowed him to work in the U.S. and not be deported.

Still, Mr. Rodriguez persists. He argues that the BFD process is discretionary and revocable, and therefore "does not carry the same statutory weight or stability" as a regulatorily blessed waitlist placement.[73] That, he claims, is sufficient to establish standing.[74] The Court disagrees.

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm . . . ."[75] Instead, "threatened injury must be *certainly impending* to constitute injury in fact . . . ."[76] Mr. Rodriguez has not alleged that USCIS's BFD designation process is even remotely under threat of revocation—much less that such revocation is certainly impending.[77] If Mr. Rodriguez could (now or in a future case) credibly make such allegations, the outcome of the jurisdictional question (now or in a future case) might be different. But those allegations have not been made.

In sum, Mr. Rodriguez has failed to establish a concrete injury in fact with respect to his waitlist determination claim. So this claim must be dismissed for lack of jurisdiction.[78]

---

[73] Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 10. The relevant statute permits, but does not require, USCIS to issue BFDs. *See* 8 U.S.C. § 1184(p)(6). Additionally, there is no regulation requiring USCIS to issue such designations.

[74] *See* Pl.'s Resp. to Mot. to Dismiss (Doc. 18) at 10.

[75] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (citation omitted).

[76] *Id.* at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

[77] *See State v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022) (rejecting injury-in-fact theory that relied on "yet-to-be-identified" agency action because it was not "certainly impending" under *Clapper*).

[78] The Government argues in its papers that parts of this case should be dismissed on mootness grounds under Rule 12(b)(1). The Court, however, views all the jurisdictional issues raised as ones of standing. The distinction between standing and mootness can, at times, be difficult to draw. The Supreme Court has put it this way: mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Here, for the reasons explained, Mr. Rodriguez lacked standing from the outset. There was no event that occurred during the case that deprived him of an injury or otherwise rendered his claims moot. *Contra Noorani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 8:25-cv-221, 2026 WL 1983268 (D. Neb. July 6, 2026) (granting 12(b)(1) motion on mootness grounds because the petitioner received a BFD designation related to his U visa petition during the litigation). Here, because Mr. Rodriguez never possessed the requisite personal interest from the get-go, the problem is standing, not mootness. Because the Court can raise jurisdictional issues *sua sponte* and because the parties have had a chance to wrestle with the guts of the jurisdictional issues here, any differences in the classification of specific arguments as standing or mootness are of no serious concern. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (explaining that federal

***

The Court wishes to end on a practical note. With respect to his U visa petition, Mr. Rodriguez is in the best possible situation he can be in right now. He has employment authorization and deferred action. He is in line for final adjudication.

It is true that Mr. Rodriguez might have to wait in line for a very long time to get a final adjudication and the U visa that comes along with a favorable final adjudication. The Court recognizes that is likely very frustrating and worrying for Mr. Rodriguez. But it is the result of a confluence of things that the Court has no power to change: (1) Mr. Rodriguez not filing a petition until 14 years after the qualifying crime; (2) the severe backlog of petitions; and (3) Congress's statutory cap of 10,000 U visas per year. Congress or USCIS have the authority to do something about some of these things. But this Court does not.[79]

courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

[79] The Court understands that, from Mr. Rodriguez's perspective, this case is not about technical constitutional rules. It is about a horrific crime visited upon him, the assistance he provided to law enforcement, and cutting through a years-long bureaucratic process marked by delay. But, no matter the issue, courts cannot ignore the constraints placed upon them by the Constitution. And one day, especially if Mr. Rodriguez should eventually become an American citizen, he will assuredly be thankful for that. Upholding individual liberty depends on resisting the quixotic quest to have unelected judges do the work that the Constitution assigns to Congress or the Executive Branch. *Cf.* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 347–48 (2012) ("Since the mid-20th century, legal theorists have been prodding judges to make policy from the bench. . . . The problem is that although properly informed human minds may agree on what a text means, human hearts often disagree on what is right. That is why we vote (directly or through our representatives) on what the law ought to be, but leave it to experts of interpretation called judges to decide what an enacted law means. It is doubtless true, as a descriptive matter, that judges will often strain to avoid what they consider an unjust result. But we decline to elevate that human tendency to an approved principle of interpretation.").

For the reasons stated above, the Court grants the Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[80] All claims in this case are dismissed without prejudice.[81] Accordingly, the Clerk is directed to terminate this case in its entirety.

IT IS SO ORDERED this 15th day of September 2026.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[80] Because there is no mandatory "sequencing of jurisdictional issues[,]" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), the Court does not address whether it's also deprived of subject matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii). This statute prevents courts from reviewing discretionary decisions made by certain Executive Branch officials under certain statutes. *See Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024).

[81] A "district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent." *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004).